## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **INTER-ISLAND FERRY SYSTEMS CORP.**, <br><br> Plaintiff, <br><br> v. <br><br> **PUERTO RICO PORTS AUTHORITY**, *et al.*, <br><br> Defendants. | Civil No. 15-3057 (BJM) |

### OPINION AND ORDER

Alleging unpaid charter dues, Inter-Island Ferry Systems Corp. (the "Company") brought this action under the court's admiralty jurisdiction against the Puerto Rico Ports Authority (the "PRPA") and the Maritime Transport Authority (the "MTA"). Docket No. 1. The PRPA and the MTA each moved to dismiss the complaint for failure to state a claim and lack of subject-matter jurisdiction, Docket Nos. 13, 15, and the Company opposed. Docket No. 18. The case is before me on consent of the parties. Docket Nos. 19–21.

For the reasons set forth below, the motions to dismiss are **DENIED**.

### MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The "party invoking the jurisdiction of a federal court carries the burden of proving its existence." *P.R. Tel. Co. v. Telecomm's Reg. Bd. of P.R.*, 189 F.3d 1, 7 (1st Cir. 1999). When deciding whether subject-matter jurisdiction exists, the court follows two general rubrics: (1) when a defendant challenges the legal sufficiency of the facts alleged, the court credits the plaintiffs' factual allegations and draws reasonable inferences in his or her favor; and (2) when the defendant challenges the truth of facts alleged by the plaintiff and offers contrary evidence, the court weighs the evidence. *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), on the other hand, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). To do so, the complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary" for the action. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). When evaluating the complaint, the court first discards any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The remaining "[n]on-conclusory factual allegations" are fully credited, "even if seemingly incredible." *Ocasio-Hernández*, 640 F.3d at 12. The court engages in no fact-finding when considering the motion, and does not "forecast a plaintiff's likelihood of success on the merits." *Id.* at 13. Rather, the court presumes that the facts are as properly alleged by the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Taken together, the facts pleaded must "state a plausible, not a merely conceivable, case for relief." *Ocasio-Hernández*, 640 F.3d at 12.

## BACKGROUND[1]

The Company operated the M.V. *Isla Grande*, a passenger and cargo vessel providing transportation services between Puerto Rico and the island-municipalities of Vieques and Culebra, during all relevant events. Compl. ¶ 8. The PRPA, a public corporation of the Commonwealth of Puerto Rico (the "Commonwealth"), chartered the M.V. *Isla Grande* in 2004 and 2005. *Id.* ¶ 9. The PRPA has refused to pay $72,400 due on the agreement. *Id.* ¶¶ 13–14. The MTA is also a public corporation of the Commonwealth, and the Company alleges that the MTA is the PRPA's "successor . . . with regard to the transportation services" between Puerto Rico and the island-municipalities. *Id.* ¶¶ 10, 14.

---

[1] This account is based upon the well-pleaded allegations in the complaint, and, therefore, must be assumed as true when evaluating the motion to dismiss. Docket No. 1 ("Compl.").

The Company alleges that the PRPA "transferred all maritime operations" to the MTA, and that the PRPA has subsequently refused to pay the amounts owed. *Id.* ¶ 6. And, without the Company's approval, the PRPA allegedly transferred or endorsed the $72,400 due on the agreement to the MTA, which allegedly "assume[d] the obligation" but has refused to pay. *Id.* ¶¶ 6, 14. The Company alternatively alleges that the MTA is liable because it is the PRPA's "successor." *Id.* ¶ 14. The MTA has used the Company's vessels for transportation services, as well as the Company's repair and maintenance services for vessels owned by the MTA. *Id.* ¶ 10.

## DISCUSSION

The PRPA and the MTA challenge the court's subject-matter jurisdiction, assert that the Eleventh Amendment shields them from any monetary liability, and contend that the complaint fails to state a claim. Docket Nos. 13, 15. The PRPA further contends that the Company is not the "real party in interest" because the corporation has been "cancelled."

### I.    Real Party in Interest

The PRPA contends that the Company is not the "real party in interest" because the Company was "cancelled" in October 2014. Docket Nos. 13 at n.1, 18 at 2. Federal Rule of Civil Procedure 17 provides that an "action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a); *see also Interstate Litho Corp. v. Brown*, 255 F.3d 19, 25 (1st Cir. 2001). For a "corporation," the capacity "to sue or be sued is determined" by "the law under which it was organized." *See* Fed. R. Civ. P. 17(b)(2). The Company was "organized" under the laws of Puerto Rico, and so Puerto Rico law governs the Company's capacity to "sue or be sued." *See* Fed. R. Civ. P. 17(b)(2).

Under Puerto Rico law, "All corporations, whether they expire by their own limitation or are otherwise dissolved, shall continue for a three . . . year term from such expiration or dissolution . . . for the purpose of prosecuting and defending suits." P.R. Laws Ann. tit. 14, § 3708. Per this statutory provision, the Company, which was "cancelled" in October 2014, has the capacity to sue or be sued until October 2017. *See, e.g., Bacardi Int'l*

*Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 7 n.9 (1st Cir. 2013) (under "Puerto Rico law," company "remained open to suit only until April 1, 2009," when it was "effectively dissolved on April 1, 2006") (citing P.R. Laws Ann. tit. 14, § 3708). The Company is thus a proper party.

## II.   Sovereign Immunity

The PRPA and the MTA contend that the Eleventh Amendment cloaks them from liability, and that this deprives the court of subject-matter jurisdiction. As an initial matter, this case was brought under the court's admiralty jurisdiction due to an alleged breach of the charter for the M.V. *Isla Grande*, a vessel hired for the maritime transportation of people and cargo. *See Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp.*, 120 F.3d 304, 308 (1st Cir. 1997) ("A 'charter party' is 'a specialized form of contract for the hire of an entire ship, specified by name'") (quoting 2 Schoenbaum, *Admiralty & Maritime Law* § 11–1, at 169 (2d ed. 1994)). It "is well-established that a charter party agreement is a maritime contract," *Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991), and thus such an agreement is "enforceable in a court of admiralty." *Armour & Co. v. Ft. Morgan S.S. Co.*, 270 U.S. 253, 259 (1926); 28 U.S.C. § 1333(1).

Notwithstanding the above, the PRPA and the MTA suggest this court lacks subject-matter jurisdiction because they are allegedly entitled to enjoy the Commonwealth's sovereign immunity. The "Supreme Court 'has declined to state definitively whether the Eleventh Amendment is a doctrine of subject matter jurisdiction.'" *Brait Builders Corp. v. Mass., Div. of Capital Asset Mgmt.*, 644 F.3d 5, 10 (1st Cir. 2011) (quoting *Hudson Sav. Bank v. Austin*, 479 F.3d 102, 109 (1st Cir. 2007)). Yet, "Eleventh Amendment questions are often labeled jurisdictional," *Parella v. Ret. Bd. of Rhode Island Employees' Ret. Sys.*, 173 F.3d 46, 55 (1st Cir. 1999), "and generally, jurisdictional issues must be resolved before analyzing dismissals under Rule 12(b)(6)." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 105 (1st Cir. 2015) (quoting *Ne. Erectors Ass'n of BTEA v. Sec'y of Labor, OSHA*, 62 F.3d 37, 39 (1st Cir. 1995)). Because the complaint plausibly states a claim as to both

the PRPA and the MTA, the defendants' entitlement to sovereign immunity under the Eleventh Amendment must be addressed. *See infra* Pt. III.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Puerto Rico's sovereign immunity in federal courts parallels the states' Eleventh Amendment immunity." *Jusino Mercado v. Commonwealth of P.R.*, 214 F.3d 34, 39 (1st Cir. 2000). And this immunity is also enjoyed by "entities that are determined to be arms of" the Commonwealth. *See Pastrana-Torres v. Corporacion de P.R. Para La Difusion Publica*, 460 F.3d 124, 126 (1st Cir. 2006). "Arm-of-the-state questions often arise with respect to special-purpose public corporations established by the state, such as" the PRPA and the MTA. *See id.* Importantly, the "entity asserting its immunity bears the burden of showing that it is an arm of the state." *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002).

To determine whether an entity is an "arm" of the state, courts employ a two-step analysis. *See Grajales v. P.R. Ports Auth.*, 831 F.3d 11, 17 (1st Cir. 2016); *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Center Corp.*, 322 F.3d 56, 65 (1st Cir. 2003). The first step of this analysis "pays deference to the state's dignitary interest in extending or withholding Eleventh Amendment immunity from an entity" by examining "how the state has structured the entity." *See Fresenius*, 322 F.3d at 65. Relevant structural indicators "include how state law characterizes the entity, the nature of the functions performed by the entity, the entity's overall fiscal relationship to the Commonwealth (as opposed to whether the Commonwealth is liable for any judgment in the particular case at hand), and how much control the state exercises over the operations of the entity." *See Grajales*, 831 F.3d at 18.

If the analysis under the first step "reveals that 'the state clearly structured the entity to share its sovereignty,' then the entity is an arm of the state and the analysis is at an end."

*Id.* (quoting *Fresenius*, 322 F.3d at 68). But when "there is an ambiguity about the direction in which the structural analysis points" under the first step, the court must proceed to the second step of the analysis. *See Fresenius*, 322 F.3d at 66. "Any other approach," the First Circuit has explained, "would give insufficient respect to the dignity interest of the sovereign that created the public corporation and that may choose not to have that public corporation share in the sovereign's immunity." *Grajales*, 831 F.3d at 18. Under the second step, "the 'dispositive question concerns the risk that the damages will be paid from the public treasury' and '[t]his analysis focuses on whether the state has legally or practically obligated itself to pay the entity's indebtedness' in the pending action." *Id.* (quoting *Fresenius*, 322 F.3d at 68, 72). "If the state is so obligated, then the entity may claim the state's immunity, even though the structural indicators do not themselves provide a sufficient indication that the entity is an arm of the state." *Grajales*, 831 F.3d at 18.

Here, the PRPA asserts that, as a "public corporation" of the Commonwealth, it is considered an "arm" of the state and entitled to share the Commonwealth's sovereign immunity. Docket No. 13 at 3. But this conclusory argument, without more, is insufficient to satisfy the PRPA's burden—as "[s]ometimes . . . states structure" state-created public corporations "at such a remove from the state government that they are not properly understood to be arms of the state." *Grajales*, 831 F.3d at 13. And, in *Grajales*, a case alleging discrimination by the PRPA, the First Circuit held, based on "the arm-of-the-state analysis" and the "arguments th[e] PRPA" presented, that the "PRPA [was] not entitled to assert the Commonwealth's immunity as an arm of the Commonwealth." 831 F.3d at 13.

To be sure, the PRPA also cites *Puerto Rico Ports Authority v. Federal Maritime Commission*, 531 F.3d 868 (D.C. Cir. 2008) and cases from this district. The district court in *Grajales* followed in step with the D.C. Circuit in holding that the PRPA was entitled to sovereign immunity as an arm of the Commonwealth. *See Federal Maritime Commission*, 531 F.3d at 880; *Grajales v. P.R. Ports Auth.*, 81 F. Supp. 3d 158, 162–65 (D.P.R. 2015). The First Circuit reversed the district court and declined to follow the D.C. Circuit's

holding. *See Grajales*, 831 F.3d at 13–15. *Grajales* shines the beacon by which the court must steer in this case, particularly since the PRPA has provided no reasoned argument as to why the result should be any different under the circumstances of this case. *See Grajales*, 831 F.3d at 20 n.9 (no argument by either party "that the outcome here depends on our deciding whether a sovereign may structure an entity to be an arm only when performing certain functions and not when performing others or whether, instead, a sovereign must be deemed to have structured an entity to be an arm in all cases so long as it structures the entity to be an arm in one case"). Thus, because the PRPA has not carried its burden of showing that it is an "arm" of the Commonwealth, the PRPA has not shown, at this juncture, that it is entitled to share the Commonwealth's sovereign immunity from suit.

The same result applies to the MTA. At this juncture, the MTA has made no effort whatsoever to demonstrate that the arm-of-the-state analysis yields a finding in its favor. *See Grajales*, 831 F.3d at 18; *Fresenius*, 322 F.3d at 65. Nor has the MTA cited any binding or persuasive authority in support of this proposition; independent research has revealed none. *See* Docket No. 15 at 2. And though the MTA cites *Federal Maritime Commission* and conclusorily argues that it is considered an "arm" of the Commonwealth because it is a "public corporation," these two points cannot carry the day—for the same reasons they were inadequate to show that the PRPA is entitled to enjoy the Commonwealth's sovereign immunity. *See id.* Thus, the PRPA and the MTA have not shown at this juncture that they are entitled to Eleventh Amendment immunity in this case.

## III.    Breach of Maritime Contract

"Admiralty jurisdiction extends only to wholly maritime contracts." *Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468, 470 (1st Cir. 1985). "Contracts to *hire* a vessel are wholly maritime." *Id.* (emphasis in original). "With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 873 (1986) (internal citation omitted); *see also Ballard*

Inter-Island Ferry Systems Corp. v. Puerto Rico Ports Authority, *et al*., Civil No. 15-3057 (BJM)          8

*Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 625 (1st Cir. 1994) ("Admiralty jurisdiction brings with it a body of federal jurisprudence, largely uncodified, known as maritime law."). "Although state law may supplement federal maritime law when the latter is silent or where a local matter is at issue, it 'may not be applied where it would conflict with [a federal] maritime law.'" *Fairest-Knight v. Marine World Distributors, Inc.*, 652 F.3d 94, 98 (1st Cir. 2011) (citing *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1047 (3d Cir. 1988)); *see also Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 28 (2004) ("It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States").

Here, the complaint plausibly alleges that the PRPA hired the M.V. *Isla Grande*, that the vessel was used over the course of two years, and that the PRPA is liable for unpaid dues on the agreement to hire that vessel. *See Navieros Inter-Americanos*, 120 F.3d at 313 ("Liability arises in the admiralty as elsewhere from breach of any valid contract . . . .") (quoting Gilmore & Black, *The Law of Admiralty* § 9–22, at 635 (2d ed. 1975)). The complaint also plausibly alleges the MTA's liability, stating that the MTA is liable as the PRPA's "successor" and that the MTA "assume[d] the obligation" at issue. Courts sitting in admiralty have recognized the availability of successor liability, as well as the assignability of a maritime contract. *See In Re Louisiana Crawfish Producers*, 772 F.3d 1026, 1030 (5th Cir. 2014) (successor liability found available "in maritime-tort cases"); *Ambassador Factors v. Rhein-, Maas-, Und See- Schiffahrtskontor GMBH (Vormals Sanara Reedereikontor GMBH)*, 105 F.3d 1397, 1400 (11th Cir. 1997) ("where a contract is indisputably maritime in nature . . . and a party to the contract assigns its rights to a third party, the third party may sue in admiralty to enforce the original contract"); *Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 804 F.2d 773, 781 (1st Cir. 1986) ("courts have been reluctant to impose demurrage liability on a party that is neither a signatory, successor nor possessor of a document that expressly or by incorporation refers to demurrage"); *Royal Ins. Co. v. Smatco Indus. Inc.*, 201 B.R. 755, 758 (E.D. La. 1996). *In Re Louisiana Crawfish*

*Producers*, 772 F.3d at 1030, and *Royal Insurance Co.*, 201 B.R. at 757, held, for example, that *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973), provides a test for evaluating successor liability in the maritime context. *See id.* at 182 n.5 (successor corporation generally "is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability").

Notwithstanding the above, the PRPA and the MTA cite the Puerto Rico Government Accounting Act, P.R. Laws Ann. tit. 3 § 283, for the proposition that the complaint should be dismissed because it fails to allege "the existence of a registered written contract with the PRPA," a public corporation. Docket Nos. 13 at 4–5, 15 at 7. This argument is insufficient to warrant dismissal of the complaint at this early stage. As an initial matter, it is unclear from the allegations in the complaint whether the agreement at issue was in writing or oral. And the Company is not required to produce the agreement to survive the motion to dismiss. *See Twombly*, 550 U.S. at 556 (court may not disregard factual allegations "even if it strikes a savvy judge that actual proof of those facts is improbable"); *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014) ("plaintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion").

Additionally, the PRPA and the MTA have failed to show that the maritime agreement at issue would not be valid even if it was orally made. Indeed, while "state law may supplement federal maritime law when the latter is silent or where a local matter is at issue," state law may not "be applied where it would conflict with" federal maritime law. *Fairest-Knight*, 652 F.3d at 98. Neither the PRPA nor the MTA develop any argument as to why a "local matter is at issue" here. *See id.* And federal maritime law is anything but "silent" with respect to this issue—for "it is an established rule of ancient respectability that oral contracts are generally regarded as valid by maritime law." *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961). The PRPA and the MTA have made no argument at this

Inter-Island Ferry Systems Corp. v. Puerto Rico Ports Authority, *et al.*, Civil No. 15-3057 (BJM)                    10

juncture that would counsel straying from this general rule. What is more, the Supreme Court has expressly held "that a State may not require that a maritime contract be in writing where admiralty law regards oral contracts as valid." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 451 (1994) (citing *Kossick*, 365 U.S. at 81). Thus, the motions to dismiss are denied.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are **DENIED**. The parties are encouraged to re-explore settling the claim for the alleged $72,400, plus legal interest.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 16th day of March 2017.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge