# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**INTER-ISLAND FERRY SYSTEMS CORP.**,

    Plaintiff,

v.

**PUERTO RICO PORTS AUTHORITY**, *et al.*,

    Defendants.

Civil No. 15-3057 (BJM)

## OPINION AND ORDER

Alleging unpaid charter dues, Inter-Island Ferry Systems Corp. (the "Company") brought this action under the Court's admiralty jurisdiction against the Puerto Rico Ports Authority (the "PRPA") and the Maritime Transport Authority (the "MTA"). Docket No. 1. The PRPA and the MTA each moved for summary judgment based on the lack of a written contract between the parties, Docket Nos. 40, 41, 44, 59, 64, 65, and the Company opposed. Docket Nos. 48, 72, 73. The Company moved for summary judgment based on the existence of an oral contract between the parties, Docket No. 52, and the PRPA and the MTA opposed. Docket Nos. 60, 66. The case is before me on consent of the parties. Docket Nos. 19–21.

For the reasons set forth below, the three motions for summary judgment are **DENIED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo* v. *U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes

demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg* v. *P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan* v. *Smith*, 904 F.2d 112, 115 (1st Cir. 1990). And the court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## BACKGROUND

Designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," Local Rule 56 requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008); D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). While the "district court may forgive a party's violation of a local rule," litigants ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

Each party filed a motion for summary judgment accompanied by a statement of uncontested facts. Docket Nos. 40, 52, 65. Although the Company responded to the statements of uncontested facts submitted by both the MTA and the PRPA, neither the MTA nor the PRPA responded to the statement of uncontested facts submitted by the Company. Docket Nos. 60, 66. As "[p]roperly supported facts contained in a [statement of uncontested facts] shall be deemed

admitted unless controverted in the manner prescribed by the local rule," the unanswered facts submitted by the Company must be considered true for the purposes of these motions. *Puerto Rico Am. Ins. Co.* v. *Rivera-Vazquez*, 603 F.3d 125, 131 (1st Cir. 2010) (citing D.P.R.R. 56(e)); see *A.M. Capen's Co. v. Am. Trading & Prod. Corp.*, 202 F.3d 469, 472 (1st Cir. 2000) (finding that there were "no facts in dispute" when the plaintiff submitted a statement of uncontested facts and the defendant failed to respond). Furthermore, as the Company only contested the relevance of the uncontested facts submitted by the PRPA and the MTA and did not contest their truthfulness, the statements of uncontested facts submitted by all parties shall be considered true for the purposes of these motions.

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56 submissions: the Company's statement of uncontested facts, Docket No. 52–1 ("CSUF"), the MTA's statement of uncontested facts, Docket No. 64 ("MSUF"), and the PRPA's statement of uncontested facts. Docket No. 41 ("PSUF"). The Company operated the M.V. *Isla Grande*, a passenger and cargo vessel providing transportation services between Puerto Rico and the island-municipalities of Vieques and Culebra, during all relevant events. CSUF ¶ 9. In August 2004, the PRPA's employees in charge of transportation services asked to charter the M.V. *Isla Grande* on an emergency basis because the PRPA's vessels were no longer in adequate condition to provide transportation services between Puerto Rico, Vieques, and Culebra. CSUF ¶ 9. The PRPA made their request for use of the M.V. *Isla Grande*, and the Company orally agreed to charter the vessel to the PRPA. CSUF ¶ 10. Following their oral agreement, the PRPA used the M.V. *Isla Grande* six times between August 30 and October 26, 2004. CSUF ¶ 11.

On October 27, 2004, the PRPA and the Company entered into a one-year written contract. PSUF ¶ 1. This contract provided for the chartering of the M.V. *Isla Grande* for ferry services between Puerto Rico, Vieques, and Culebra. PSUF ¶ 1; Docket No. 41-1. The Company was paid in full for its services provided under the contract. CSUF ¶ 12; PSUF ¶ 6. The PRPA also chartered M.V. *Isla Grande* on two occasions in September 2005: September 2 and September 27. CSUF ¶ 13.

The Company now seeks payment of $72,400 plus interest for the charters of the M.V. *Isla Grande* that fell outside of the written contract it had with the PRPA. CSUF ¶ 13; Docket No. 52 at 14. The Company has sought to collect this payment from the PRPA and the MTA but has been unsuccessful. CSUF ¶ 15.

The MTA is the PRPA's "successor . . . in all matters concerning" ferry services between Fajardo, Vieques and Culebra including "the collection of accounts and payment of the obligations." MSUF ¶ 11; 23 L.P.R.A. §3213(a).

## DISCUSSION

At the outset, the PRPA argues that the Company's motion for summary judgment should not be considered because the Company filed it on December 15, 2016, one month after the November 15 deadline for dispositive motions established in the pretrial memorandum. Docket No. 19, 20.

"We begin with bedrock: trial judges have an abiding responsibility for the efficient management of the cases on their dockets." *Torres v. Puerto Rico*, 485 F.3d 5, 10 (1st Cir. 2007). "The Civil Rules endow trial judges with formidable case-management authority. . . . In exercising this power, '[t]rial judges enjoy great latitude.'" *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998) (quoting *Jones v. Winnepesaukee Realty,* 990 F.2d 1, 5 (1st Cir. 1993)). This authority "enables the court to shepherd cases towards fair, yet efficient, resolution." *Id*. at 316. When parties choose to ignore the case management deadlines established by the court, district court judges may sanction the offending parties "in a variety of ways, including but not limited to the preclusion of untimely motions." *Torres*, 485 F.3d at 10 (quoting *Rosario-Diaz,* 140 F.3d at 315). "This flexibility is necessary because the circumstances attendant to noncompliance are apt to differ widely. . . . [T]he choice of an appropriate sanction must be handled on a case-by-case basis." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002). The First Circuit has provided a noncomprehensive list of factors for district court judges to consider when deciding how to respond to an untimely motion: "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses,

prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." *Robson v. Hallenbeck*, 81 F.3d 1, 2 (1st Cir. 1996) (also considering procedural aspects such as prior warnings by the court or conversely a lack of warning by the court).

Here, the Company clearly filed its motion one month after the deadline for dispositive motions had passed. In its response to the MTA's motion for summary judgment, the Company explained that it believed that the extension that the Court had granted to the MTA for filing its motion for summary judgment applied to all parties. Docket No. 72 at 5. This excuse is rather flimsy as the MTA specifically petitioned the Court for an extension based on the MTA's particular circumstances, which had no bearing on the Company. Conversely, though, neither defendant claimed to be prejudiced by the delay, and there was no prejudice to the operations of the Court as MTA's motion for summary judgment had not yet been filed. Most importantly, the power given to the Court to manage case deadlines should be used to ensure efficient and fair resolutions of cases. Dismissing the Company's motion for summary judgment would needlessly slow down the resolution of this case and would not make the proceedings fairer. Therefore, with the understanding that the Company is now on notice that each party must make its own requests for extensions of filing dates, and trusting that this will be an isolated incident, the Court will consider the Company's untimely motion for summary judgment.

The PRPA first seeks summary judgment on the basis that the Company has no standing to sue. Docket No. 40 at 5. However, the PRPA raises no new arguments from when it first challenged the Company's standing in its motion to dismiss, which this Court denied. Docket No. 75. Federal Rule of Civil Procedure 17 provides that an "action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a); *see also Interstate Litho Corp. v. Brown*, 255 F.3d 19, 25 (1st Cir. 2001). For a "corporation," the capacity "to sue or be sued is determined" by "the law under which it was organized." *See* Fed. R. Civ. P. 17(b)(2). The Company was "organized" under the laws of Puerto Rico, and so Puerto Rico law governs the Company's capacity to "sue or be sued." *See* Fed. R. Civ. P. 17(b)(2).

It is uncontested that the Department of State of the Commonwealth of Puerto Rico revoked the Company's certificate of incorporation on October 18, 2014. PSUF ¶ 9. Although Puerto Rico law generally requires that a corporation have an active and valid certificate of incorporation to do business in Puerto Rico—including to exercise its right to sue as it did here—Puerto Rico law also provides that "[a]ll corporations, whether they expire by their own limitation or are otherwise dissolved, shall continue for a three . . . year term from such expiration or dissolution . . . for the purpose of prosecuting and defending suits." P.R. Laws Ann. tit. 14, § 3501; P.R. Laws Ann. tit. 14, § 3708. Per this statutory provision, the Company, which was "cancelled" in October 2014, has the capacity to sue or be sued until October 2017. *See, e.g.*, *Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 7 n.9 (1st Cir. 2013) (under "Puerto Rico law," company "remained open to suit only until April 1, 2009," when it was "effectively dissolved on April 1, 2006") (citing P.R. Laws Ann. tit. 14, § 3708). As this action commenced in December 2015, the Company has standing to bring this suit, and summary judgment is inappropriate.

Both the PRPA and the MTA also argue that summary judgment against the Company should be granted because there is no relevant written contract between the parties covering the dates for which the Company is seeking reimbursement. In making their argument, the PRPA and the MTA fatally rely on Puerto Rico law as opposed to federal maritime law.

"Admiralty jurisdiction extends only to wholly maritime contracts." *Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468, 470 (1st Cir. 1985). "Contracts to *hire* a vessel are wholly maritime." *Id.* (emphasis in original). "With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 873 (1986) (internal citation omitted); *see also Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 625 (1st Cir. 1994) ("Admiralty jurisdiction brings with it a body of federal jurisprudence, largely uncodified, known as maritime law."). "Although state law may supplement federal maritime law when the latter is silent or where a local matter is at issue, it 'may not be applied where it would conflict with [a federal] maritime law.'" *Fairest-Knight v. Marine World Distributors, Inc.*, 652

F.3d 94, 98 (1st Cir. 2011) (citing *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1047 (3d Cir. 1988)); *see also Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 28 (2004) ("It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States").

"A charter, also called a 'charter party,' is a specialized maritime contract for the lease, by a 'shipowner' to a 'charterer,' of an entire vessel." *JJ Water Works, Inc. v. San Juan Towing & Marine Servs., Inc.*, 59 F. Supp. 3d 380, 389 (D.P.R. 2014). "Under general contract law principles no contract exists where the parties fail to agree on all the essential terms or where some are too indefinite to be enforceable." *Great Circle Lines, Ltd. v. Matheson & Co., Ltd.,* 681 F.2d 121, 124 (2d Cir. 1982); *see Rabenstein v. Sealift, Inc.*, 18 F. Supp. 3d 343, 350–51 (E.D.N.Y. 2014) (As "there is no particular test for determining the existence of an oral contract under maritime law," though, the court must look "to general common law principles for guidance in determining whether an oral agreement existed"). Although "any term can be made essential as long as one party makes the term's importance known to the other side," courts have also looked to the "established practices and customs of the shipping industry" to reveal what constitute the essential terms of a charter party. *In the Matter of the Arbitration Between J. Lauritzen A/S and Korea Shipping Corp.*, 1986 AMC 2450, 2452 (S.D.N.Y. June 6, 1986); *JJ Water Works, Inc.*, 59 F. Supp. 3d at 390. Using the customs of the shipping industry, the Second Circuit provided several essential or "significant 'main' terms" of a charter party such as "the name of the charterer, name of owner, ship and its characteristics, time and place of delivery, duration of charter, place of redelivery, hire rate . . . and any other term that a party deems important." *Great Circle Lines, Ltd.,* 681 F.2d at 125. Whether there was a meeting of the minds between the parties is a question of fact. *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 534 (2d Cir. 1975).

"It is an established rule of ancient respectability that oral contracts are generally regarded as valid by maritime law." *Kossick v. United Fruit Co.*, 365 U.S. 731, 734 (1961). Furthermore, the Supreme Court has expressly held "that a State may not require that a maritime contract be in

writing where admiralty law regards oral contracts as valid." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 451 (1994) (citing *Kossick*, 365 U.S. at 81).

Notwithstanding the above, the PRPA and the MTA cite the Puerto Rico Government Accounting Act, P.R. Laws Ann. tit. 3 § 283, for the proposition that the complaint should be dismissed because it fails to allege "the existence of a registered written contract" with the PRPA, a public corporation. Docket No. 40 at 6; Docket No. 65 at 8–11. They curiously avoid any mention of the conflict between this requirement and federal maritime law in their motions or oppositions. However, the Supreme Court has already made a clear and binding ruling on this issue: when a conflict arises between the clearly established federal law that oral agreements can create valid maritime contracts and state law, the federal law is supreme. *See Am. Dredging Co.*, 510 U.S. at 451; *In re M/V Rickmers Genoa Litig.*, 643 F. Supp. 2d 553, 557 (S.D.N.Y. 2009) ("[N]o [state] legislation is valid if it . . . works material prejudice to the characteristic features of the general maritime law[.]" (quoting *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 216 (1917))).

Turning to the formation of the alleged oral contract, it is uncontested that the PRPA and the Company agreed that the Company would provide the PRPA with a crewed charter of the M.V. *Isla Grande* on an emergency basis. CSUF ¶ 9. Moreover, the parties agreed that the vessel would be used for service between Puerto Rico, Vieques, and Culebra. Docket No. 52–2 at 2. Although this provides the essential terms of the name of the charterer, name of the owner, and the ship, the essential terms of when the charter would take place and the hire rate are still unclear. The Company never alleged that the PRPA agreed when the emergency charters would begin; the Company merely stated that PRPA "proposed, on an emergency basis to charter . . . the M.V. *Isla Grande*." However, this does not explain whether the parties understood that the charter would begin that day or in a week. CSUF ¶ 9. Similarly, although the Company presented evidence that the total amount due on the contract is $72,400, it never stated that this was the rate agreed upon by the PRPA. CSUF ¶ 14. While the Court must take as true the uncontested statement of facts submitted by the Company, the Court does not have the responsibility to assume that the elements of a valid contract existed when the Company has presented no such evidence. Because the

Company has not shown that the essential terms of the price and timing of the charter were agreed upon by the parties, there remains a genuine dispute of material fact as to whether or not there was a valid oral contract.

Finally, even if the oral contract is valid, there remains a genuine dispute as to which charters were covered by the oral contract as opposed to the written contract. The Company alleges that the PRPA chartered the M.V. *Isla Grande* on six days over the course of two months, then the parties entered into a one-year contract, and then, once the written contract had expired, the parties reached another oral agreement that the Company would charter the vessel to the PRPA on September 2 and September 27, 2005. CSUF ¶ 11–13. All told, the Company alleges that the PRPA chartered the M.V. *Isla Grande* for eight days, all of which were outside the scope of the written contract. However, it is also undisputed that the written contract was signed on October 27, 2004 and was valid for one year. PSUF ¶ 1. As such, the written contract would have still been valid for the last two charter dates, September 2 and September 27, 2005, that the Company alleges were solely controlled by the oral contract. This is a genuine dispute of material fact that is inappropriate for disposition at the summary judgment stage. Therefore, because no written contract is needed in maritime law when a valid oral contract exists, the Court cannot grant summary judgment to the Defendants based on the lack of a written contract between the parties. Furthermore, the Court cannot grant summary judgment to the Company because there remain genuine issues of material fact as to whether or not a valid oral contract existed.

The Company also seeks summary judgment on the grounds of *indebitatus assumpsit*. *Indebitatus assumpsit* is the "federal common-law cause of action for money had and received." *United States v. California*, 507 U.S. 746, 751 (1993). It "is classified as an action *ex contractu* as distinguished from an action *ex delicto*. Hence, in order to sustain the action, it is necessary for the plaintiff to establish an express contract or facts and circumstances from which the law will raise an implication of a promise to pay." *Syed v. Mohammad*, No. 1:15-CV-01332, 2016 WL 8731783, at *4 (E.D. Va. Apr. 1, 2016) (quoting *Raven Red Ash Coal Co. v. Ball*, 185 Va. 534, 541 (1946)). More simply put, *indebitatus assumpsit* is a remedy that is only available when there was an

express or implied contract between the parties under which one party fully performed and the other has yet to pay. *See Wolfe v. Prairie Oil & Gas Co.*, 83 F.2d 434, 437–38 (10th Cir. 1936) ("[W]here the contract has not been fully performed by plaintiff, *indebitatus assumpsit* will not lie."); *Am. Locomotive Co. v. Harris*, 239 F. 234, 238 (1st Cir. 1916) ("It is only when a contract is at an end, either by its provisions or by the wrongful act of the defendant, so that nothing remains to be done but to pay money (that) general assumpsit will lie." (internal quotations omitted)); *Syed*, No. 1:15-CV-01332, at *4 (dismissing *indebitatus assumpsit* claim when there was no "express or implied contract by which [the plaintiff] allegedly became indebted to Defendant"). *Indebitatus assumpsit* is an accepted remedy within federal maritime law so long as "the unjust enrichment arose as a result of the breach of a maritime contract." *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 610 (1991) (quoting *Archawski v. Hanioti*, 350 U.S. 532, 536 (1956)).

     Summary judgment for the Company is not available on these grounds either. As discussed above, there remain genuine issues of material fact as to whether or not a valid oral contract existed between the parties. If one does, it would be an express contract; the Company could recover damages under *indebitatus assumpsit* because the Company would have fulfilled all of their obligations under the maritime contract, and yet the Defendants would have failed to pay. Although *indebitatus assumpsit* is also an available remedy for an implied contract, "the law will not imply a contract where there is an existing valid express contract embracing the same subject." *Wolfe v. Prairie Oil & Gas Co.*, 83 F.2d 434, 38 (10th Cir. 1936). Therefore, the Court will not imply a contract when it is still uncertain as to whether an express contract on the same subject exists.

     Lastly, the MTA moves for summary judgment on the issue of its liability as the PRPA's successor. Courts sitting in admiralty have recognized the availability of successor liability, as well as the assignability of a maritime contract. *See In Re Louisiana Crawfish Producers*, 772 F.3d 1026, 1030 (5th Cir. 2014) (successor liability found available "in maritime-tort cases"); *Ambassador Factors v. Rhein-, Maas-, Und See- Schiffahrtskontor GMBH (Vormals Sanara Reedereikontor GMBH)*, 105 F.3d 1397, 1400 (11th Cir. 1997) ("where a contract is indisputably maritime in nature . . . and a party to the contract assigns its rights to a third party, the third party

may sue in admiralty to enforce the original contract"); *Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 804 F.2d 773, 781 (1st Cir. 1986) ("courts have been reluctant to impose demurrage liability on a party that is neither a signatory, successor nor possessor of a document that expressly or by incorporation refers to demurrage"); *Royal Ins. Co. v. Smatco Indus. Inc.*, 201 B.R. 755, 758 (E.D. La. 1996). *In Re Louisiana Crawfish Producers*, 772 F.3d at 1030, and *Royal Insurance Co.*, 201 B.R. at 757, held that *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973), provides a test for evaluating successor liability in the maritime context. *See id.* at 182 n.5 (successor corporation generally "is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability").

Here, the MTA, a public corporation, is the PRPA's "successor . . . in all matters concerning" ferry services between Fajardo, Vieques and Culebra including "the collection of accounts and payment of the obligations." MSUF ¶ 11; 23 L.P.R.A. §3213(a). As such, it is clear that if the PRPA has an obligation to the Company through their alleged oral contract, the MTA expressly agreed to assume the PRPA's obligations in the very Act that created the MTA. *See* 23 L.P.R.A. §3213(a) In its motion for summary judgment, the MTA failed to cite to any federal maritime law, let alone any precedent, that contradict a finding that the MTA is not the PRPA's successor. Therefore, the MTA is not entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment are **DENIED**. The parties are encouraged to re-explore settling the claim for the alleged $72,400, plus legal interest.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 31st day of October 2017.

                                        *S/ Bruce J. McGiverin*
                                        BRUCE J. MCGIVERIN
                                        United States Magistrate Judge